**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Vincent Sanchez,

Plaintiff,

v.

Corrohealth Incorporated,

Defendant.

No. CV-25-00026-PHX-ROS

**ORDER**

Before the Court is Defendant Corrohealth, Inc.'s Motion to Exclude the Expert Report and Related Testimony and Opinions of Jim Kirkendall. (Doc. 43.) Plaintiff Vincent Sanchez filed a Response, (Doc. 46), and Defendant filed a Reply, (Doc. 48).

For the reasons that follow, the Court will deny Defendant's Motion.

## I. BACKGROUND

Defendant is a healthcare analytics company selling tools to hospitals and health plans. Plaintiff is a former salesperson for Defendant whose compensation included commissions based on the value of the deals he booked. In his First Amended Complaint, Plaintiff alleges Defendant refused to pay him his earned commissions and states claims for unpaid wages, breach of contract, breach of implied covenant, and promissory estoppel. (Doc. 1-2.) Plaintiff describes this dispute as arising "because Defendant used shifting terminology and retroactive application of [new] commission terms to justify paying Mr. Sanchez less than what it promised—turning what should be a straightforward 'percentage times deal value' calculation into an ongoing dispute over how his work was categorized

and paid." (Doc. 46 at 1.)

At trial, Plaintiff intends to proffer the expert testimony of Jim Kirkendall to establish how much Plaintiff should have earned in commission based off his sales in the relevant timeframe. Mr. Kirkendall has "over two decades" of experience "designing, implementing, and managing healthcare analytics products, working directly with executive leadership and sales teams on pricing, revenue, and compensation structures." (*Id.* at 2.) His educational background includes "bachelor's degrees in economics and mathematics, and a master's in business administration." (*Id.*) Mr. Kirkendall's professional experience includes not only "develop[ing] and oversee[ing] applicable commission structures for healthcare analytics companies but also "includes industry-wide experience gained through interviews with sales personnel and interactions with peers at similar companies." (*Id.* at 3.)

## II. LEGAL STANDARD

Under *Daubert*, the Court holds a gatekeeping role and screens proffered expert testimony to "ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). To be reliable, "proposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Id.* at 591.

Under Federal Rule of Evidence 702, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education" and may offer their opinion on matters within that expertise. Rule 702 also requires expert testimony (a) "help the trier of fact to understand the evidence or to determine a fact in issue," (b) be "based on sufficient facts or data," (c) be "the product of reliable principles and methods," and (d) "reflect[] a reliable application . . . to the facts of the case." These requirements are subject to the preponderance of the evidence standard, meaning the proponent of the testimony must demonstrate to the court "that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

Rule 702 provides that a qualified expert may testify in the form of an opinion if the proponent demonstrates that more likely than not:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–95 (1993) (specifying nonexhaustive factors to consider when assessing the reliability of expert testimony under Rule 702). *Daubert* motions to exclude expert testimony can be brought during discovery or as a motion in limine. *See, e.g.*, *Est. of Schuck v. Cnty. of San Diego*, No. 23-cv-00785-DMS-AHG, 2025 WL 2180987, at *3 (S.D. Cal. Aug. 1, 2025).

## III. ANALYSIS

Defendant argues Mr. Kirkendall's report and opinion are inadmissible because (1) his report is unsigned; (2) he "lacks the experience and expertise necessary to proffer his opinions"; and (3) the calculations in his report "are incorrect because they omitted available information Kirkendall admits should have been taken into account, and because Kirkendall admits he did not use the appropriate methodology." (Doc. 44 at 4.)

### A. Signature Requirement

Defendant argues Mr. Kirkendall did not "sign" his expert report as required by Fed. R. Civ. P. 26(a)(2)(B) because "Kirkendall's name is merely typed at the end of the document in regular, inconspicuous font." (Doc. 44 at 4.) According to Defendant, Rule 26(a)(2)(B) requires an expert to either physically sign, electronically sign with e-signature software, or "italicize, bold, underline, or make any other change to his typewritten name to indicate its significance." (*Id.*)

However, Defendant offers no authority supporting this narrow interpretation of Rule 26(a)(2)(B) as requiring an expert do more than "merely type[]" their name "at the end of the [report] in regular, inconspicuous font." (*Id.*) Moreover, Mr. Kirkendall's name

appears below a line setting it apart from the preceding text, and above the date on which he signed his report. (Doc. 45-1 at 14.) In other words, it looks like a basic signature block.

There is also no evidence that Mr. Kirkendall's report does not represent his final opinions and conclusions as he will present them at trial. Defendant points to statements in Mr. Kirkendall's deposition that this version of his report "was intended initially to be a draft," he "was expecting to make changes with it," and he admits "a few things . . . could have been cleaned up." (Doc. 44 at 5.) Defendant agrees the report could have been "cleaned up" as it "is riddled with typos and errors." (*Id.*) But if, as Defendant suggests, the changes Mr. Kirkendall expected to make were simply clerical (like fixing "typos and errors"), then there is no reason to believe this report does not represent the final opinions and conclusions that Mr. Kirkendall will testify to at trial. Defendant has not proffered any evidence that Mr. Kirkendall's testimony will change—he testified multiple times that "that he would not substantively change his report," (Doc. 46 at 18), and stated that he approved this version of the report "to be submitted as final," (Doc. 46-1 at 6). Moreover, Plaintiff has not treated the opinions contained in the report as being preliminary and nonfinal. *See* Fed. R. Civ. P. 26(b)(4)(B) (providing work-product protection for draft reports, which Plaintiff has not invoked).

As such, there is no reason to find Mr. Kirkendall's report violates the signature requirement or is otherwise not "final" under Fed. R. Civ. P. 26(a)(2)(B).

**B. Expert Qualifications**

The Ninth Circuit has emphasized that Rule 702 is "broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). The proponent of expert testimony need only lay a "minimal foundation" of "knowledge, skill, experience, training, or education" in the topic at hand. *Id.* An expert may not offer opinions on matters "outside the areas of [their] expertise." *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011). However, "as long as an expert stays within the reasonable confines of his subject area," *id.*, then the expert's "lack of *particularized* expertise goes to the weight accorded [their]

testimony, not to the admissibility of [their] opinion as an expert," *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) (emphasis added).

Defendant argues Mr. Kirkendall is unqualified because he intends to offer his opinion on "the calculation of commissions" even though he "has no experience working as, supervising, or reporting to commission salespersons." (Doc. 44 at 12.) Furthermore, Defendant asserts Mr. Kirkendall "has never worked with channel partners, never sold a product or service through a channel partner, never worked at a company that utilized channel partners, and has no prior experience with channel expansion." (*Id.*)

In response, Plaintiff notes "Defendant does not dispute that Mr. Kirkendall is qualified to perform financial and mathematical analysis," and asserts Mr. Kirkendall is qualified because he has personal experience designing commission plans for previous companies he's worked for. (Doc. 46 at 8.) Plaintiff argues that "[r]ead as a whole, [Mr. Kirkendall's] testimony reflects practical experience with intermediary sales arrangements in which a company sells through a third-party vendor to end customers—precisely the structure Defendant describes as 'channel expansion.'" (Doc. 46 at 10.)

Overall, Defendant's arguments go to the weight, not admissibility, of Mr. Kirkendall's opinion. Mr. Kirkendall may not have particularized expertise from working as a commission salesperson or directly supervising them. Nevertheless, he has sufficient experience with designing similar commission plans to proffer his opinion. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (noting the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to" non-scientific testimony, "whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it" (quoting *Elsayed Mukhtar v. Cal. St. Univ., Hayward*, 299 F.3d 1053, 1169 (9th Cir. 2002))).

**C. Relevance and Reliability**

"Rule 702 is concerned with 'the soundness of [the expert's] methodology,' rather than 'the correctness of the expert's conclusions.'" *Englis*, 151 F.4th at 1050 (alteration in

original) (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)). However, the proposed testimony must meet "the thresholds of relevance and reliability" before its proponent is "entitled to have the jury decide upon [its] credibility." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (alteration in original) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 656 (9th Cir. 2006)).

Generally, "[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry" and "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (citation omitted).

**1. Opinion on Grace Periods**

Defendant argues Mr. Kirkendall's opinion regarding standard grace periods before a company transitions to a new commission plan is unreliable because Mr. Kirkendall has personal knowledge of only two such changes, both of which used a 60-day transition rather than the 30-day period Mr. Kirkendall used to perform his calculations. Defendant essentially argues there must be some magic number of observed changes before Mr. Kirkendall has sufficient experience to render his opinion. But given his decades of experience in the healthcare analytics field, these two changes can form a basis for Mr. Kirkendall's opinion, particularly if they simply reflect that such changes are generally not commonplace. Also, the fact that Mr. Kirkendall used a more conservative grace period of 30 days, rather than the 60-day period he has personally observed, does not render his opinion unreliable because he sufficiently explained his reason for using a 30-day period based on Plaintiff receiving "lead notice that commission changes were coming." (Doc. 45-2 at 55.)

Defendant also faults Mr. Kirkendall for stating that his opinion is based, at least in part, on his "common sense." (Doc. 44 at 14.) But this is not the same as stating that his opinion is within "the common knowledge of the average layman." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001).

Mr. Kirkendall's opinion as to what constitutes a "fair" grace period when changing commission plans is not solely based on "generalized ideas of fairness," (Doc. 44 at 14), but rather relies on his expertise in the relevant field. Mr. Kirkendall opines in his report that a 30-day grace period is fair because, *inter alia*, this short window "lets already-in-flight deals finish under the promises that motivated the work" and "[h]ealthcare buyers rarely move faster; security, privacy, and contracting are mandatory and time-consuming." (Doc. 46-1 at 69.) A layman's generalized conception of fairness could lead a jury to agree with Mr. Kirkendall's opinion, but his opinion is based on the "common sense" of a qualified expert in his field, which is sufficient.

**2. Methodology for Calculations**

Defendant argues Mr. Kirkendall's methodology for calculating the commissions Plaintiff should have earned is unreliable because he (1) failed to take into account relevant documents "showing the commissions Sanchez had already received on each contract," (Doc. 44 at 6); (2) relied on "the least accurate evidence available," the customer relationship management ("CRM") data, rather than "the actual contracts giving rise to the commissions"; and (3) "made demonstratively incorrect assumptions" (*id.* at 7). Each of these arguments goes to the weight, but not the admissibility, of Mr. Kirkendall's opinion.

First, although an expert may not rely on irrelevant or incorrect facts, an expert is not required to take into account *every* allegedly relevant document for the expert's testimony to be admissible. *Cf. Faulkner v. Wausau Bus. Ins. Co.*, 571 F. App'x 566, 569 (9th Cir. 2014) (affirming this Court's exclusion of expert testimony regarding an insurer's claims handling practices because the expert never even reviewed that insurer's claims handling records). Moreover, the commissions Plaintiff already received were not necessary for Mr. Kirkendall to form his opinion. As Plaintiff notes, Mr. Kirkendall explained that "commission payments affect the outstanding balance" owed to Plaintiff "but do not alter the calculation of earned commissions." (Doc. 46 at 16.) In other words, Mr. Kirkendall's opinion is based on calculating how much Plaintiff *should* have earned in commissions, regardless of any offset for commissions that Defendant already paid to

Plaintiff. Despite whether the jury adopts the "booked value" methodology advanced by Plaintiff or the "recognized revenue" methodology advanced by Defendant, it is for the jury to decide how much, if anything, to award Plaintiff, after taking into account any evidence of prior commission payments.

Second, even if the CRM data was "the least accurate evidence available," it does not unequivocally mean that the CRM data was *not* accurate in the sense that Mr. Kirkendall's methodology is unreliable and inadmissible. Defendant makes no argument beyond what is properly raised on cross-examination—that Mr. Kirkendall should have, but did not, consider more accurate evidence.

Third, Defendant's factual disputes over Mr. Kirkendall's assumptions are properly challenged on cross-examination, but they do not render his testimony inadmissible. Defendant points to only one "demonstratively incorrect" assumption made by Mr. Kirkendall—"that every contract listed in CorroHealth's customer relationship software as an 'add-on service' should generate a commission for a 'cross-sale.'" (Doc. 44 at 7–8.) Defendant argues this assumption was demonstratively incorrect because "the document on which [Mr. Kirkendall] relied stated on its face that at least one of the 'add-on services' Kirkendall assumed was a 'cross-sale' was instead 'growth' in existing business." (*Id.* at 8.) However, even accepting Defendant's contention, it does not establish this single erroneous assumption renders Mr. Kirkendall's calculations so unreliable as to lack any probative value. *See, e.g.*, *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 258 (D. Ariz. 2022) ("State Farm argues that [the expert] did not correctly identify 'expenses' by including such costs as taxes and commissions. This does not show that his methodology is unreliable but only that his calculation may be wrong, which should be challenged on cross-examination."). Based on his experience, (Doc. 45-2 at 53), Mr. Kirkendall is able to "articulate a valid basis" for his assumptions. *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 571 F. Supp. 3d 106, 117 (S.D.N.Y. 2021). Moreover, to the extent that Mr. Kirkendall's assumptions reflect Plaintiff's subjective expectations of payment, such expectations could be relevant considerations in assessing Plaintiff's claim for unpaid wages. *See* A.R.S. § 23-

350(7) (defining "wages" to include "nondiscretionary compensation . . . for which the employee has a reasonable expectation to be paid").

Thus, Defendant's arguments may be proper subjects of cross-examination, but they do not render Mr. Kirkendall's opinion unreliable and inadmissible. Accordingly,

**IT IS ORDERED** Defendant's Motion to Exclude the Expert Report and Related Testimony and Opinions of Jim Kirkendall (Doc. 43) is **DENIED**.

Dated this 14th day of September, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge